UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.:

EVELYN MCMILLIAN,

　　　　　Plaintiff,

Vs.

SHARP TRANSIT, LLC
A  North Carolina Corporation,
SHARP TRANSIT OF ROYAL PALM BEACH, LLC

_____/

## **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff, EVELYN MCMILLIAN, on behalf of herself and other

individuals similarly situated, and hereby sues Defendant, SHARP TRANSIT, LLC, and SHARP

TRANSIT OF ROYAL PALM BEACH LLC., (Hereinafter collectively "SHARP") allege as

follows:

## **I:  NATURE OF THE CLAIM**

1.　　　Plaintiff is black female employed by Defendant, SHARP at its primary location

in Royal Palm Beach, Florida.  Plaintiff alleges that Defendant, SHARP maintained a pattern and

practice of discrimination against Plaintiff and other similarly situated black employees on

account of race, with respect to the terms and conditions of Plaintiff's employment and

discriminated against Plaintiff individually. Plaintiff likewise alleges that Defendant, SHARP

created an unlawful hostile work environment for Plaintiff individually, and other similarly

situated black employees based on race, and that Plaintiff was retaliated against for complaining about the racially disparate treatment.

## II: <u>JURISDICTION AND VENUE</u>

2.      This is an action for damages in excess of the jurisdictional limits of this Court, for violations of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 1981, 42 U.S.C. §1983, and Chapter 760 of the Florida Statutes. This Court has subject matter jurisdiction pursuant to 42 U.S.C. 2000 €, et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983 and U.S.C., § 1391(b).

3.      Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide claims arising under state law, in that the claims arise out of the same nucleus of operative facts and are such that they would ordinarily be expected to be tried in one judicial proceeding.

## III: <u>PARTIES</u>

4.      Plaintiff, EVELYN MCMILLIAN, is an individual who resides in Greenacres Florida. At all material times, Ms. McMillian, a black female, was employed as a delivery truck driver at Defendant, SHARP's principle Florida offices located at 1171 N. State Road Seven, Royal Palm Beach, Florida.

5.      Defendant, SHARP TRANSIT, LLC is a North Carolina Corporation, who at all material times was authorized to do business and doing business in the State of Florida. At all material times, Defendant, SHARP TRANSIT, LLC, employed fifteen (15) or greater employees for each regular working day in each of twenty (20) or more calendar weeks in the current and/or preceding calendar year, and is otherwise an "employer" within the meaning of Title VII, and the Florida Civil Rights Act.

6.      Defendant, SHARP TRANSIT OF ROYAL PALM BEACH,  LLC, is a North Carolina Corporation, who at all material times was authorized to do business and doing business

in the State of Florida. At all material times, Defendant, SHARP TRANSIT OF ROYAL PALM BEACH, LLC, employed fifteen (15) or greater employees for each regular working day in each of twenty (20) or more calendar weeks in the current and/or preceding calendar year, and is otherwise an "employer" within the meaning of Title VII, and the Florida Civil Rights Act.

7.     At all material times, Defendant's, SHARP TRANSIT, LLC and SHARP TRANSIT OF ROYAL PALM BEACH, LLC, functioned as Plaintiff's "single employer" in that their business operations were interrelated; their labor relations were controlled by the same officers, directors and managers, shared human resources; Defendant, SHARP TRANSIT OF ROYAL PALM BEACH, LLC  was wholly owned by Defendant, SHARP TRANSIT, LLC.,. shared the same active board members and officers,

8.     At all material times, Defendants, SHARP served as a dedicated hauler and warehouse for the multinational grocery chain ALDI, with terminals located throughout the East Coast of the United States, including its principle Florida offices and distribution terminal located at 1171 N. State Road Seven, Royal Palm Beach, Florida.

### IV: EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Plaintiff timely filed her charge of race, color discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) and/ Florida Commission On Human Relations on November 15, 2019. Copies of Plaintiff's EEOC Charge is attached as **Exhibit "A"**.

10.     More than 180 days have elapsed since Plaintiff dual-filed her charge with the EEOC and FCHR, and as such, on May 27, 2020 the EEOC issued Plaintiff  a Notice of Right To Sue. Copy of the EEOC Notice of Right To Sue are attached hereto as **EXHIBIT "B"**.

11.     All other conditions precedent to the initiation of this cation have been performed, satisfied, or waived.

## V: **FACTUAL ALLEGATIONS**

12.     Plaintiff, MCMILLIAN was hired as a truck driver by Defendant, SHARP on or about February 20, 2018. Upon information and belief, Plaintiff, McMILLIAN was the sole black female employee working at the Defendants, principle Florida offices and distribution terminal located at 1171 N. State Road Seven, Royal Palm Beach, Florida.

13.     Throughout her employment, Plaintiff MCMILLIAN was discriminated against and harassed based on her race, by being treated differently than similarly situated non-Black employees, and by being harassed and treated dissimilarly because of race.

14.     Specifically, (1) Plaintiff, and other similarly situated black employees received less favorable, less lucrative, and less frequent job assignments and routs than non-black, and predominantly Hispanic similarly situated coworkers, thereby resulting in unequal pay for black employees; (2) Plaintiff and other similarly situated black employees were denied payment for work performed, including extra clean out and deliveries; (3) Plaintiff, and other similarly situated black employees were subjected to longer training periods, subjecting black employees to longer periods of lower "training pay" than non-black employees; (4)  Plaintiff and other similarly situated employees received disparate disciplinary action than non-black employees, which included more frequent and sever discipline for the same or similar violation; (5) Plaintiff and other similarly situated employees were subjected to pervasive racially derogatory slurs, including the use of the word "nigger" and "monkey" within Defendant's facility by non-black to describe black employees, without repercussion.  More specifically, including but not limited to the following comments from management and co-workers: "you have to watch those niggers",

"niggers don't run shit here", and calling the cab of the trucks driven by black employees "the monkey's seat".

15.     Plaintiff complained to HR and management, including Henry Buchholts, Anthony Stephens, Phillip Snipes, and Rodney Ellis about the companies' discriminatory policies and actions towards herself and other similarly situated black employees, however nothing was done to address the complained of discriminatory conduct.

16.     Instead, on April 13, 2019, in retaliation for her complaints of discrimination, Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment.  Thereafter, and in further and continued retaliation for her complaints Defendant, failed and refused to provide subsequent employers confirmation of employment thereby resulting in the loss of potential future employment.

## COUNT I:
## DISCRIMINATION VIOLATION OF 42 U.S.C. §1981
## (PATTERN AND PRACTICE AND INDIVIDUAL DISCRIMINATION)

17.     Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 16 and incorporates the same herein as though fully set forth.

18.     Defendant discriminated against Plaintiff, and other similarly situated black employees due to Plaintiff's race and skin color, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

19.     Defendants engaged in a practice and pattern of unlawful discrimination on the basis of race by subjecting Plaintiff, and other similarly situated black employees to disparate treatment in the terms and conditions of employment, and by terminating Plaintiffs employment

based upon her race and color. Such discrimination was part of Defendant's regular practice and pattern.

20. Defendants pattern and practice of discrimination against Plaintiff and other Black employees included, but was not limited to the following: (1) Plaintiff, and other similarly situated black employees received less favorable, less lucrative, and less frequent  job assignments and routs than non-black, and predominantly Hispanic similarly situated coworkers, thereby resulting in unequal pay for black employees; (2) Plaintiff and other similarly situated black employees were denied payment for work performed, including extra clean out and deliveries; (3) Plaintiff, and other similarly situated black employees were subjected to longer training periods, subjecting black employees to longer periods of "training pay" than non-black employees; (4)  Plaintiff and other similarly situated employees received disparate disciplinary action than non-black employees, which included more frequent and sever discipline for the same or similar violation; (5) Plaintiff and other similarly situated employees were subjected to pervasive racially derogatory slurs, including the use of the word "nigger" and "monkey" within Defendant's facility by non-black to describe black employees, without repercussion. More specifically comments including but not limited to, "you have to watch those niggers", "niggers don't run shit here", and calling the cab of the trucks driven by black employees, "the monkey's seat".

21. Upon information and belief, Defendant's pattern, and practice of discrimination in Defendant's terms and conditions of employment for Plaintiff and other similarly situated black employees was designed to injure, reduce, and/or eliminate blacks from Defendants company.

22. Defendant's reasons for its actions concerning Plaintiff's discharge were pretextual and an attempt to conceal Plaintiff's racially motivated discharge.

23. There is not a legitimate non-discriminatory business reason for Defendant's termination of Plaintiff.

24. Non-black employees have not been terminated, or otherwise similarly disciplined for the same reason given by Defendant for Plaintiff's termination.

25. As a direct and proximate result of defendant's willful, knowing, and intentional discrimination against him, Plaintiff has suffered a loss of earning and other employment benefits and job opportunities as well as emotional pain and suffering, mental anguish, embarrassment, inconvenience and loss of enjoyment of life. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

26. The outrageous conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff. Defendant through its officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

27. Plaintiff has retained the undersigned counsel. Defendants discrimination against Plaintiff violates the Civil Rights Act of 1966 and renders Defendant liable for Plaintiff's attorneys' fees and costs.

28. WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

## COUNT II: VIOLATION OF 42 U.S.C. §1981
## (HOSTILE WORK ENVIRONMENT BASED UPON RACE)

30.    Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 16 and incorporates the same herein as though fully set forth.

31.    Defendant engaged in a pattern of unlawful employment practices, in violation of Title VII, 42 U.S.C. Section 1981, by subjecting Plaintiff and other similarly situated black employees to a hostile work environment based upon race.

32.    Plaintiff, McMILLIAN was first employed by the Defendant, SHARP in on or about February 20, 2018 and remained employed with the Defendant until her termination on April 13, 2019 .

33.    Throughout her employment Defendants management and employees engaged in racially derogatory conduct towards, Plaintiff and other similarly situated black employees including but not limited to the following: (1) Plaintiff, and other similarly situated black employees received less favorable, less lucrative, and less frequent job assignments and routs than non-black, and predominantly Hispanic similarly situated coworkers, thereby resulting in unequal pay for black employees; (2) Plaintiff and other similarly situated black employees were denied payment for work performed, including extra clean out and deliveries; (3) Plaintiff, and other similarly situated black employees were subjected to longer training periods, subjecting black employees to longer periods of lesser "training pay" than non-black employees; (4)  Plaintiff and other similarly situated black employees received disparate disciplinary action than non-black employees, which included more frequent and sever discipline for the same or similar violation; (5) Plaintiff and other similarly situated employees were subjected to pervasive racially derogatory slurs, including the use of the word "nigger" and "monkey" within Defendant's facility by non-

blacks to describe black employees, without repercussion. More specifically comments including but not limited to, "you have to watch those niggers", "niggers don't run shit here" and calling the cab of the trucks driven by black employees "the monkey's seat".

34.     Prior to her termination, Plaintiff complained about the unlawful and racially motivated treatment.

35.     On April 13, 2019, in retaliation for her complaints of discrimination, Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment.    Thereafter, and as further retaliation, Defendant, for months failed and refused to provide subsequent employers verification of employment, thereby resulting in the loss of potential future employment.

36.     The hostile environment imposed upon Plaintiff was so severe and pervasive as to affect the terms, conditions, and privileges of Plaintiff's employment, and the employment of other similarly situated black employees.

37.     As a direct and proximate result of defendant's willful, knowing and intentional disparate treatment of Plaintiff, and other black employees, Plaintiff has suffered a loss of earning and other employment benefits and job opportunities as well as emotional pain and suffering, mental anguish, embarrassment, inconvenience and loss of enjoyment of life.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

38.     The outrageous, systemic conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff.  Defendant through its officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

39.     Plaintiff has retained the undersigned counsel. Defendants discrimination against Plaintiff violates the Civil Rights Act of 1966 and renders Defendant liable for Plaintiff's attorneys' fees and costs.

40.     WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

## COUNT III: VIOLATION OF TITLE VII
## (UNLAWFUL TERMINATION BASED UPON RACE)

41.     Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 16 and incorporates the same herein as though fully set forth.

42.     Defendant engaged in a pattern of unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. Section 2000e, by terminating her employment because of her race.

43.     Specifically, during the course of her employment (1) Plaintiff, and other similarly situated black employees received less favorable, less lucrative, and less frequent job assignments and routs than non-black, and predominantly Hispanic similarly situated coworkers, thereby resulting in unequal pay for black employees; (2) Plaintiff and other similarly situated black employees were denied payment for work performed, including extra clean out and deliveries; (3) Plaintiff, and other similarly situated black employees were subjected to longer training periods, subjecting black employees to longer periods of "training pay" than non-black employees; (4) Plaintiff and other similarly situated employees received disparate disciplinary action than non-black employees, which included more frequent and sever discipline for the same or similar violation; (5) Plaintiff and other similarly situated employees were subjected to pervasive racially

derogatory slurs, including the use of the word "nigger" and "monkey" within Defendant's facility by non-black to describe black employees, without repercussion. More specifically comments including but not limited to, "you have to watch those niggers", "niggers don't run shit here" and calling the cab of the trucks driven by black employees "the monkey's seat".

44.     Prior to her termination, Plaintiff complained about the unlawful and racially motivated treatment.

45.     On April 13, 2019, in retaliation for her complaints of discrimination and based on her race, Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment.   Thereafter, and as further retaliation, Defendant, failed and refused to provide subsequent employers confirmation of employment, thereby resulting in the loss of potential future employment.

46.     Defendant's reasons for its actions concerning Plaintiff's discharge were pretextual and an attempt to conceal Plaintiff's racially motivated discharge.

47.     There is not a legitimate non-discriminatory business reason for Defendant's termination of Plaintiff 's employment.

48.     As a direct and proximate result of defendant's willful, knowing, and intentional discrimination against him, Plaintiff has suffered a loss of earning and other employment benefits and job opportunities as well as emotional pain and suffering, mental anguish, embarrassment, inconvenience and loss of enjoyment of life.   Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

49.     The outrageous conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff.   Defendant through its officers, managing agents and/or

supervisors, authorized, condoned, and/or ratified the unlawful conduct.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

50.     As a direct and proximate result of Defendant's violation of existing law, as described herein below, Plaintiff has been compelled to retain the services of counsel and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff is entitled to recovery of attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5(k) and Federal Rule of Civil Procedure 54.

WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

## COUNT IV: VIOLATION OF TITLE VII
### (HOSTILE WORK ENVIRONMENT BASED UPON RACE)

51.     Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 16 and incorporates the same herein as though fully set forth.

52.     Defendant engaged in a pattern of unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. Section 2000e, by subjecting Plaintiff to a hostile work environment based upon race.

53.     Plaintiff, McMILLIAN was first employed by the Defendant, SHARP in on or about February 20, 2018 and remained employed until her termination on April 13, 2019 .

54.     Throughout her employment Defendants management and employees engaged in racially derogatory conduct towards, Plaintiff and other similarly situated black employees

including but not limited to the following: (1) Plaintiff, and other similarly situated black employees received less favorable, less lucrative, and less frequent job assignments and routs than non-black, and predominantly Hispanic similarly situated coworkers, thereby resulting in unequal pay for black employees; (2) Plaintiff and other similarly situated black employees were denied payment for work performed, including extra clean out and deliveries; (3) Plaintiff, and other similarly situated black employees were subjected to longer training periods, subjecting black employees to longer periods of "training pay" than non-black employees; (4) Plaintiff and other similarly situated employees received disparate disciplinary action than non-black employees, which included more frequent and sever discipline for the same or similar violation; (5) Plaintiff and other similarly situated employees were subjected to pervasive racially derogatory slurs, including the use of the word "nigger" and "monkey" within Defendant's facility by non-blacks to describe black employees, without repercussion.

55.     Prior to her termination, Plaintiff complained about the unlawful and racially motivated treatment.

56.     On April 13, 2019, in retaliation for her complaints of discrimination, Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment.     Thereafter, and as further retaliation, Defendant, failed and refused to provide subsequent employers confirmation of employment, thereby resulting in the loss of potential future employment.

57.     The hostile environment imposed upon Plaintiff was so severe and pervasive as to affect the terms, conditions, and privileges of Plaintiff's employment.

58.     As a direct and proximate result of defendant's willful, knowing and intentional disparate treatment of Plaintiff, and other black employees, Plaintiff has suffered a loss of earning and other employment benefits and job opportunities as well as emotional pain and suffering,

mental anguish, embarrassment, inconvenience and loss of enjoyment of life. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

59.     The outrageous conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff. Defendant through its officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

60.     As a direct and proximate result of Defendant's violation of existing law, as described herein below, Plaintiff has been compelled to retain the services of counsel and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff is entitled to recovery of attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5(k), Federal Rule of Civil Procedure 54.

WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

## COUNT V:
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED II 1991 42 U.S.C. 200E ET. SEQ.

61.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 16 as if full set forth herein again at length.

62.     Since at least February 2018, Defendant, employer engaged in unlawful employment practices in violation of Sections 703(e) and Section 704(a) of Title VII, 42 U.S.C.

Section 20002 (a) and Section 2000e-3(a) in that, Plaintiff was subject to a hostile work environment, and treated in a disparate manner, based on her race, as set forth herein above.

63.     Prior to her termination, Plaintiff complained about the unlawful and racially motivated treatment described herein.

64.     On April 13, 2019, in retaliation for her complaints of discrimination, Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment.     Thereafter, and as further retaliation, Defendant, failed and refused to provide subsequent employers confirmation of employment, thereby resulting in the loss of potential future employment.

65.     The effect of the conduct complained of herein above, has been to deprive Plaintiff of equal employment opportunities, employment contract opportunities and otherwise adversely affect her status as an employee in retaliation for her opposition to unlawful employment practices.

66.     The unlawful conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff. Defendant through its officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct in that Defendant, was made aware of Plaintiff's complaints of racial hostile work environment and disparate treatment based on race, failed to take any disciplinary or remedial action. Instead terminated Plaintiff, McMILLIAN because she complained of the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

67.     Defendant's unlawful acts of discrimination and retaliation were intentional and done with malice or reckless indifference to Plaintiff's rights protected under Federal law.

68.     As a direct and proximate result of Defendant's violation of existing law, as described herein, Plaintiff has been compelled to retain the services of counsel and has thereby

incurred, and will continue to incur, legal fees and costs. Plaintiff is entitled to recovery of attorney's fees and costs pursuant to 42 U.S.C. 2000e-5(K) and Federal Rule of Civil Procedure 54.

WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

## COUNT VI: RETALIATION IN VIOLATION OF TITLE 42 U.S.C. 1981 ET. SEQ.

69.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 15 as if full set forth herein again at length.

70.    Since at least February 2018, Defendant, employer engaged in unlawful employment practices in violation of Sections 703(e) and Section 704(a) of Title VII, 42 U.S.C. Section 20002 (a) and Section 2000e-3(a) and $2 U.S.C. §1981 in that, Plaintiff was subject to a hostile work environment, and treated in a disparate manner, based on her race, as set forth herein above.

72.    Prior to her termination, Plaintiff complained about the unlawful and racially motivated treatment described herein.

73.    On April 13, 2019, in retaliation for her complaints of discrimination, Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment.    Thereafter, and as further retaliation, Defendant, failed and refused to provide subsequent employers confirmation of employment, thereby resulting in the loss of potential future employment.

74.     The effect of the conduct complained of herein above, has been to deprive Plaintiff of equal employment opportunities, employment contract opportunities and otherwise adversely affect her status as an employee in retaliation for her opposition to unlawful employment practices.

75.     The unlawful conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff. Defendant through its officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct in that Defendant, was made aware of Plaintiff's complaints of racial hostile work environment and disparate treatment based on race, failed to take any disciplinary or remedial action. Instead terminated Plaintiff, McMILLIAN because she complained of the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

76.     Defendant's unlawful acts of discrimination and retaliation were intentional and done with malice or reckless indifference to Plaintiff's rights protected under Federal law.

77.     As a direct and proximate result of Defendant's violation of existing law, as described herein, Plaintiff has been compelled to retain the services of counsel and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff is entitled to recovery of attorney's fees and costs pursuant to 42 U.S.C. 1981 and Federal Rule of Civil Procedure 54.

WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

## COUNT VII:
## VIOLATION THE FLORIDA CIVIL RIGHTS ACT OF 1992, FLA. STAT. 760 ET SEQ.
### (DISCHARGE & HOSTILE WORK ENVIRONMENT BASED UPON RACE)

78.     Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 16 and incorporates the same herein as though fully set forth.

79.     Defendant engaged in a pattern of unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. Section 2000e, by terminating her employment because of her race.

80.     Specifically, during the course of her employment (1) Plaintiff, and other similarly situated black employees received less favorable, less lucrative, and less frequent job assignments and routs than non-black, and predominantly Hispanic similarly situated coworkers, thereby resulting in unequal pay for black employees; (2) Plaintiff and other similarly situated black employees were denied payment for work performed, including extra clean out and deliveries; (3) Plaintiff, and other similarly situated black employees were subjected to longer training periods, subjecting black employees to longer periods of "training pay" than non-black employees; (4) Plaintiff and other similarly situated employees received disparate disciplinary action than non-black employees, which included more frequent and sever discipline for the same or similar violation; (5) Plaintiff and other similarly situated employees were subjected to pervasive racially derogatory slurs, including the use of the word "nigger" and "monkey" within Defendant's facility by non-black to describe black employees, without repercussion. More specifically comments including but not limited to, "you have to watch those niggers" and calling the cab of the trucks driven by black employees "the monkey's seat".

81.     Prior to her termination, Plaintiff complained about the unlawful and racially motivated treatment.

82.     On April 13, 2019, in retaliation for her complaints of discrimination, and because of her race Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment. Thereafter, and as further retaliation, Defendant, failed and refused to provide subsequent employers confirmation of employment, thereby resulting in the loss of potential future employment.

83.     Defendant's reasons for its actions concerning Plaintiff's discharge were pretextual and an attempt to conceal Plaintiff's racially motivated discharge.

84.     There is not a legitimate non-discriminatory business reason for Defendant's termination of Plaintiff after twenty years of employment.

85.     The hostile environment imposed upon Plaintiff was so severe and pervasive as to affect the terms, conditions, and privileges of Plaintiff's employment.

86.     As a direct and proximate result of defendant's willful, knowing, and intentional discrimination against him, Plaintiff has suffered a loss of earning and other employment benefits and job opportunities as well as emotional pain and suffering, mental anguish, embarrassment, inconvenience and loss of enjoyment of life. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

87.     The outrageous conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff. Defendant through its officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

88.     As a direct and proximate result of Defendant's violation of existing law, as described herein below, Plaintiff has been compelled to retain the services of counsel and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff is entitled to recovery of attorneys' fees and costs pursuant to Florida Statute 760, Et Seq.

WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

## COUNT VIII:
## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, FLA. STAT. 760 ET SEQ

89.     Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 16 and incorporates the same herein as though fully set forth.

90.     Since at least February 2018, Defendant, employer engaged in unlawful employment practices in violation of the Florida Civil Rights Act Fl. Stat 760, Et Seq., in that, Plaintiff was subject to a hostile work environment, and treated in a disparate manner, based on her race, as set forth herein above.

91.     Prior to her termination, Plaintiff complained about the unlawful and racially motivated treatment described herein.

92.     On April 13, 2019, in retaliation for her complaints of discrimination, Plaintiff was called into the office of Terminal Manager, Henry Buchholtz, who together with District Manager, Phillip Snipes terminated Plaintiff's employment.   Thereafter, and as further retaliation, Defendant, failed and refused to provide subsequent employers confirmation of employment, thereby resulting in the loss of potential future employment.

93.     The effect of the conduct complained of herein above, has been to deprive Plaintiff of equal employment opportunities, employment contract opportunities and otherwise adversely affect her status as an employee in retaliation for her opposition to unlawful employment practices.

94.     The unlawful conduct of Defendant described above was done with oppression and malice; with a reckless and conscious disregard for Plaintiff's rights; and with intent, design, and purpose of injuring Plaintiff. Defendant through its officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct in that Defendant, was made aware of Plaintiff's complaints of racial hostile work environment and disparate treatment based on race, failed to take any disciplinary or remedial action. Instead terminated Plaintiff, McMILLIAN because she complained of the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof to be presented at trial.

95.     Defendant's unlawful acts of discrimination and retaliation were intentional and done with malice or reckless indifference to Plaintiff's rights protected under Federal law.

96.     As a direct and proximate result of Defendant's violation of existing law, as described herein, Plaintiff has been compelled to retain the services of counsel and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff is entitled to recovery of attorney's fees and costs pursuant to Florida Statute 760, Et, Seq.

WHEREFORE, Plaintiff, McMILLIAN respectfully demands judgment against Defendant for back pay and benefits due and payable, front pay and benefits, compensatory and punitive damages, reasonable attorney's fees and cost incurred in this action and for such other relief as is just and proper under the circumstances.

Plaintiff demands trial by jury on all issues so triable.

Dated this 8[h] day of June, 2020.

Respectfully Submitted,
ROUSSO BOUMEL LAW FIRM

9350 South Dixie Highway
Suite # 1520
Miami, Florida 33156
Telf: (305) 670-6669

By:     /s/ *Darren J. Rousso, Esq.*
        DARREN J. ROUSSO, ESQ.
        Florida Bar #0097410
        darren@roussolawfirm.com

# EXHIBIT "A"

RECEIVED
NOV 27 2019
EEOC-MIAMI DISTRICT

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | |
| [X] EEOC | |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Evelyn McMillian | (561) 574-8706 | 7/12/1980 |

| Street Address | City, State and ZIP Code |
|---|---|
| 5649 S. 38th Street, Greenacres, Fl 33463 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| SHARP TRANSIT, LLC | 15+ | (754) 300-1335 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1171 N. STATE RD 7, Royal Palm Beach, Fl 33411 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| SHARP Transit of Royal Palm Beach, LLC | 15+ | (704) 630-1160 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1355 Long Ferry Rd, Salisbury, NC 28146 | |

**DISCRIMINATION BASED ON** *(Check appropriate boxes.)*

[X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify) **Pregnancy**

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 2/20/18 | 4/13/19 |

[✓] CONTINUING ACTION

**THE PARTICULARS ARE** *(If additional paper is needed, attach extra sheet(s)):*

I was employed as a truck driver with Sharp Transit from approximately 2/20/18 through 4/13/19. I was the first, and possibly the only black woman working at The Sharp Transit facility located at 1171 N. State Road 7, Royal Palm Beach, Florida. During the term of my employment, myself and other black employees have been treated disimilarly to other similarly situated, non-black employees by management at the facility. Such disparate treatment included but was not limited to: (1) Intentional assignment of less favorable, less profitable loads/routs, irrespective of seniority, thereby resulting in unequal pay for black employees; (2) A Racially hostile working environment, which included numerous racially derogatory slurs and comments; and (3) Disparate disciplinary action amongst black and non-black employees. I complained to management about the unequal pay and pervasive racism within the facility, however management failed to take reasonable measures to alleviate, and actually participated in, the racially disparate treatment and hostile work environment. On 4/13/19 I was terminated in retaliation for my complaints.

I believe that I am a victim of discrimination because of my race (Black), and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. 1981.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 11-15-19 _____ Evelyn McMillian_____ <br> Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# EXHIBIT "B"

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Evelyn Mcmillian**<br>5649 S. 38th Street<br>Greenacres, FL 33463 | From: **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2020-01164** | **Susan Diaz,**<br>**Investigator** | **(786) 648-5870** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*                                                05/27/2020

Enclosures(s)

**Michael J. Farrell,**
**District Director**

*(Date Mailed)*

cc:

**Respondent Representative**
**Nicole Crawford, Esq.**
**SHARP TRANSIT, LLC**
**1355 Long Ferry Road**
**Salisbury, NC 28146**

**Charging Party Representative**
**Darren Rousso, Esq.**
**9350 S. Dixie Hwy, Ste 1520**
**Miami, FL 33156**